(118 So. 820)

No. 29311.

## JOHNSON v. VINCENNES BRIDGE CO.*

### In re JOHNSON.

Oct. 29, 1928.

*For opinion of Court of Appeal, see 119 So. 539.

Harvey E. Ellis, of Covington, and Robert D. Jones, of Franklinton, for applicant.

Seymour Riddle, of Vincennes, Ind., Lewis L. Morgan, of New Orleans, and J. Monroe Simmons, of Covington, for respondent.

ROGERS, J. This matter is before us on a writ of review. The suit was instituted by plaintiff under the Employers' Liability Law (Acts 1914, No. 20) to recover compensation in the sum of $847.25. The main defense to the action was that the plaintiff was an independent contractor, and not an employee of the defendant company. A secondary defense was that plaintiff's injury was not such an injury as is compensable under the statute. The district court gave plaintiff judgment for $800, which was reversed by the Court of Appeal. That court held that plaintiff was an independent contractor, and, as such, was not entitled to any recovery. We think the decision

is warranted by the facts, which we have carefully reviewed.

The record shows that in the year 1926 the Vincennes Bridge Company, the respondent, was engaged in building a bridge across West Pearl river in the parish of St. Tammany. In the course of the work it entered into an agreement with L. H. Johnson, the relator, whereby he undertook to unload a certain carload of steel and to haul the steel when unloaded from the railroad station to the scene of the building operations—a distance of about one-half of a mile. The parties estimated the weight of the steel to be 32 tons, and the agreement was that relator was to be paid at the rate of $2 per ton for unloading and hauling it. It was understood, also, that relator was to furnish all trucks and all labor necessary for doing the work. A few days after the agreement was entered into, relator, using a truck, which he owned, and assisted by two laborers, whom he had employed, began to unload and transport the steel. On the same day, about 4 o'clock in the afternoon, while plaintiff and his helpers were unloading the steel from the freight car to the truck, one of the pieces of steel fell on relator's hand, causing the injury upon which the present suit is founded.

Plainly, the transaction was not one in which the respondent exercised, or was intended to exercise, any supervision or control over the relator. The latter was not required to unload particular pieces of steel as they were pointed out to him by the respondent or its agents, nor was he specifically directed to the place where and to whom he should deliver the steel. Relator was not carried on the pay roll of the respondent, nor was he to be paid biweekly on the regular pay days. Under the agreement, all that was required of the relator was that in his own time and in his own way he should unload a specific amount of steel from a particular railroad car and transport it from that point to a

specific destination—the bridge site—for a stipulated price per ton. Relator furnished his own truck, and employed his own laborers, who were unknown to the respondent, in order to carry out his part of the agreement. He expected to complete the work in four days, at a total expense of $37.50, including a charge of $5 for the use of his truck, netting him $27.50 as his profit on the contract. The fact that relator, in unloading the steel from the car, was permitted to use some equipment belonging to the respondent, does not destroy his character as an independent contractor. Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L. R. A. (N. S.) 632. Nor was that result accomplished because, the morning after relator was injured, respondent secured other persons to complete the unloading and hauling of the steel. Respondent himself sent his own truck and employees to continue the work, but, when they found that other persons were on the job, these employees returned with the truck to the home of the relator. The nature of the contract was established by the terms of the agreement, and neither of the parties could control its legal effect. Relator could have insisted on his rights under the contract, and, if respondent's action in cancelling it was unwarranted, could have sued for and recovered the profits of which he had been deprived.

Relator strongly relies on the case of Burt v. Davis-Wood Lbr. Co., 157 La. 111, 102 So. 87, contending that the facts in the case are in all respects similar to the facts in the case at bar. In some, but not in all, respects the facts in both cases are similar. The Court of Appeal in its opinions, on the original hearing and on the application for a rehearing, has pointed out wherein the cases are dissimilar, and it is unnecessary for us to incorporate its analysis in our opinion. It suffices to say that the issues in the present case are not controlled by the decision in the Burt Case.

Relator also cites Bell v. Albert Hanson Lbr. Co., 151 La. 824, 92 So. 350, and Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99. The decisions are not appropriate, because the facts which brought the plaintiffs in those cases within the terms of the Workmen's Compensation Law are wholly absent from the present case. In one of the cited cases—Dick v. Gravel Logging Co.—we said that the statute is humane in its purpose, and its scope should be enlarged, and its provisions liberally construed, so as to include all services that can be reasonably said to come within them. We adhere to the principle enunciated as being applicable to all cases arising under the statute. Nevertheless the line must be drawn somewhere, and we think it is proper to do so in a case, such as the one at bar, in which the relations of the parties are clearly shown to be those of contractor and contractee, and not those of employer and employee.

For the reason assigned, the judgment of the Court of Appeal herein, brought up for review, is affirmed, at relator's cost.