**MARBURY et al. v. LOUISIANA HIGHWAY COMMISSION.***

No. 4691.

Court of Appeal of Louisiana. Second Circuit.

March 29, 1934.

Elder & Elder, of Ruston, for appellants.

E. R. Stoker, of Baton Rouge, and Lewis L. Morgan and A. S. Cain, Jr., both of New Orleans, for appellee.

TALIAFERRO, Judge.

Plaintiffs have owned since the year 1928 a tract of woodland, containing twelve acres, between one-fourth and one-half of a mile east of the corporate limits of the town of Ruston, La. The tract fronts on the concrete highway (Dixie-Overland) 1,000 feet and on the Farmerville-Ruston gravel highway over 500 feet. It was purchased by plaintiffs with the view of converting it into residential subdivisions to Ruston. They paid $400 per acre for it. It was under fence.

In the year 1929 the Louisiana Highway Commission gave Nelson Brothers of Memphis, Tenn., a contract to construct a concrete highway between Ruston and the village of Choudrant, some ten miles east, generally along the route of the pre-existing gravel road between these places. Plaintiffs gave no right of way deed to the commission to any part of their land, but the blueprints and plans delineating the proposed concrete highway clearly disclosed that the 80-foot right of way therefor included a strip of 10 feet in width along the entire front of plaintiffs' property, 1,000 feet.

The workmen and employees of Nelson Brothers, without the permission of plaintiffs, and doubtless because of the plans and specifications under which they were building the road, trespassed upon plaintiffs' land along a large portion of its front, if not the entirety thereof, and cut down thirty-six pine, gum, and oak trees thereon. This suit was instituted to recover damages from the Highway Commission on account of said trespass.

The defense of the commission is that Nelson Brothers, in executing the contract for the building of said highway, was an independent contractor, for whose torts defendant is not responsible.

Plaintiffs' demands were rejected by the lower court, and they prosecute this appeal.

The judge of the court a quo reduced his findings of fact and reasons for judgment to writing. These are in the record. Our study of the case has convinced us that so far as the facts are concerned the lower court's findings are correct, except in one particular which we shall comment on hereafter. Counsel for plaintiffs find no fault therewith, except in the instance referred to. We do not agree with the lower court as to the law applicable to these facts. We quote the following from its reasons for judgment:

"The evidence in the case shows that the Louisiana Highway Commission, the defendant herein, entered into a contract, under date of July 9, 1929, with Nelson Brothers, under and by virtue of which contract said Nelson Brothers agreed and bound themselves to furnish and deliver all materials, and equipment, and do, perform and furnish all labor necessary for the satisfactory completion of that certain highway project known as State Bond project No. 4000, and which is that portion of route No. 4 lying and being between the Town of Ruston and the Town of Choudrant, for a fixed sum of money. All the work, under this contract, was to be done by the contractors in accordance with the plans, specifications and special provisions

prepared by the Commission, and, further, it was to be done under the directions of the engineer of the Commission, whose decision as to the true construction and meaning of the plans and specifications was to be final.

"Thus it is readily seen, from a reading of the contract, that the Louisiana Highway Commission did not undertake the completion of this highway project itself and itself furnish all materials, equipment and labor necessary to its completion, but that it contracted the whole thereof to Nelson Brothers, reserving to itself such directory and supervisory powers as were necessary to see that the contractors did the work in strict accordance with the plans and specifications furnished by the Commission.

"Plaintiffs affirmatively allege that the trespass complained of was done by the contractors. The plaintiffs themselves, in their testimony, admit that the trespass and damage resulting therefrom were done by the employees of the contractors. They knew of no instance where any employee of the defendant went upon their property or cut any trees thereon. The fact is well established that the trees were cut by the employees of the contractors.

"Plaintiffs contend that defendant's resident engineer, Mr. K. N. Saubrey, directed and caused the contractors to commit the alleged trespass. It will be noted from the evidence that defendant owned only a sixty-foot right of way at the point where the highway adjoins plaintiffs' property. The plans prepared by defendant and furnished to the contractors show an eighty-foot right of way. Thus, the right of way shown on the plans took in ten feet of plaintiffs' property to which defendant had not acquired title. It is obvious that the contractors, whose duty it was, under the contract, to clear the right of way, undertook to follow the plans and, in doing so, unlawfully entered upon plaintiffs' property and cut their trees to the extent alleged in their petition. But the evidence does not show that defendant, or its resident engineer, Mr. Saubrey, directed or instructed the contractors to go upon plaintiffs' land and cut these trees. Mr. Saubrey testified for defendant, and it is his testimony that he told the contractors not to go beyond the limits of the old right of way, and there is no testimony in the record to contradict him on that point. It is true that he told plaintiff, Mr. Atkinson, that he understood that defendant had obtained a right of way from plaintiffs or he would not have allowed the contractors' employees to go on plaintiffs' land and cut the trees, but that statement does not mean that Mr. Saubrey told them to go on plaintiffs' land and cut their trees, or that defendant is responsible therefor. No such construction can be logically placed upon his testimony.

"Defendant presents the defense and the argument in support thereof that the contractors, Nelson Brothers, whose employees did the damage to plaintiffs' property, were independent contractors, and for whose acts of trespass while performing the contract, defendant is not liable.

"The defense is well founded in the jurisprudence of this State.

"Under the plain terms and provisions of the contract between the Louisiana Highway Commission and Nelson Brothers, interpreted in the light of the holding of the Supreme Court of Louisiana in the case of Beck v. Dubach Lumber Co. et al., 171 La. 423, 131 So. 196, and the authorities therein cited, Nelson Brothers were independent contractors. In that case the Court held that the defendants were not liable for the acts of trespass committed by their independent contractors.

"A similar issue to the one at bar was presented to the Court of Appeal in the case of Alonzo L. Harper v. Police Jury of Bienville Parish, 2 La. App. 21. The facts in that case were that the Louisiana Highway Commission and the Police Jury of Bienville Parish gave Smith a contract to build a gravel road. Smith sub-contracted the work to McDermott. Harper sued the Police Jury and Smith and McDermott for damages for illegally trespassing on his enclosed premises by using the same as a passageway to haul gravel and damaging the same by ruining grass and skinning up fruit trees and making deep ruts on the premises. The court gave plaintiff judgment against the contractors; but rejected his demands as to the Police Jury. The Court of Appeal said:

" 'The lower court rejected plaintiff's demand as against the Police Jury, which, we think, was proper. In taking the action it did, as hereinafter mentioned, it acted in its governmental capacity and was not, we think, responsible in damages.'

"Considering all the evidence in the case and the law applicable thereto, the plaintiffs have failed to make out their case, and, accordingly, their demands against defendant, Louisiana Highway Commission, must be rejected. And it is so ordered."

It is well-established law that as a rule the employer is not responsible for the torts and negligence of an independent con-

tractor; but, as with most rules of law, there are exceptions to this rule. One is where the duties of the independent contractor require the handling of dangerous instrumentalities (Montgomery v. Gulf Ref. Co., 168 La. 74, 121 So. 578); and another is, as in the case before us, where the execution of the contract as written, not the manner and method of executing it, causes injury or damage to another in his personal or property rights.

In the present case, the blueprint of the profile of the highway in front of plaintiffs' property, which was the guide to Nelson Brothers, in the execution of the contract with the Highway Commission, clearly dis-, closed that it included 10 feet of plaintiffs' land along the entire front thereof. It was the duty of the contractor to clear the right of way of the road of all timber or trees. It was in fulfillment of this obligation that the trespass was made on plaintiffs' land. It was caused by a literal following of the contract of which the blueprint was made a part, and which, in its entirety, was prepared by defendant.

■ The ownership of the land within the 80-foot strip embraced in the highway was of no concern to Nelson Brothers. No duty was imposed on it to secure the right to enter on any part thereof. That duty devolved upon the commission and they had the right to assume, and doubtless did assume, that the commission had secured the right to enter on and clear the 10-foot strip belonging to plaintiffs.

The work done by Nelson Brothers was closely supervised by defendant's engineers and representatives as it progressed. There is some testimony in the record to the effect that Nelson Brothers' superintendent was told by defendant's resident engineer not to enter on plaintiffs' land, but this testimony is far from satisfactory or conclusive on the point. It is on this question of fact that we disagree with the lower court. This engineer does say that he instructed Nelson Brothers not to molest plaintiffs' property because he knew no right of way deed had been secured, but he also told Mr. Atkinson that he understood such a deed had been secured, or else he would not have allowed the contractors' employees to go on the land at all. In view of these contradictory statements, and other facts and circumstances in the case, we are convinced Nelson Brothers were never instructed not to clear any part of plaintiffs' land. The fact that the trespass was committed under the eye of defendant's engineers and employees strongly negatives the intima-

tion that Nelson Brothers was notified not to do that which they did do, viz., commit the trespass on plaintiffs' property. It is unreasonable to think that they would have done this if instructed not to. Certainly they would not expect pay for such work if forbidden to do it; and it is equally certain they would not be paid for doing so in the face of contrary orders.

■ The trial judge concluded that as Nelson Brothers was not definitely instructed to enter plaintiffs' inclosure and clear this strip of land, that the commission was not responsible for the results of the trespass. This conclusion is erroneous from a legal standpoint. The contract, of which the blueprint and road specifications are part, was the guide to Nelson Brothers. They needed no other instructions from defendant to fulfill the obligations that were imposed on them by the contract.

We have found no Louisiana case directly in point. We have been referred to none. Courts of other states have dealt with the question and, so far as our investigation has gone, the jurisprudence is uniform that where execution of the contract, and not the manner of its execution, does injury or damage to a third person, even though the relation of the contractor and contractee be independent, the contractee is responsible for the injury and damage flowing from the contract's execution.

The following quotations from Corpus Juris succinctly reflect the general rule on the question:

"Where the act which causes the injury is one which the contractor was employed to do and the injury results, not from the manner of doing the work but from the doing of it at all, the employer is liable for the acts of his independent contractor. If the contractor does the thing which he is employed to do, the employer is responsible for that thing, as if he did it himself. However, where the injury does not necessarily result from the work, the contractee is not liable under this exception." Section 1535.

"In accordance with the rule above stated, where the work involves the commission of a trespass, or where a trespass is committed by the advice or direction of the contractee, he cannot escape liability because the work was done by an independent contractor. Where no trespass is directed or called for by the work, the contractee is not liable therefor." Section 1536.

"In accordance with the rule above stated, where the work contracted for, as distin-

guished from the method of doing it, will itself create a nuisance, the employer is liable for resulting injuries. It is otherwise, however, where the nuisance and the resulting injury were not the natural result of the work contracted to be done." Section 1537.

"If the acts contracted to be done are in themselves unlawful, the contractee will be liable for injuries resulting from the performance of such acts. However, this rule is subject to the limitation that the doing of the unlawful act must be the proximate cause of the injury." Section 1538.

"As a general rule, if injury results from work done by an independent contractor in accordance with defective plans or specifications furnished by the contractee, the latter will be liable for the injury. However, if the contractee employs a competent and skillful architect to furnish the plans and specifications or uses ordinary care in his selection, he will not be liable by reason of defects in the plans and specifications which he did not know of and by ordinary care could not have known of. In these circumstances, the contractee is entitled to rely on the safety of the plans until the care attributable to the ordinary careful man likewise circumstanced suggests a suspension of that reliance. But if he is told of defects in the plans made by a competent architect employed by him, it will, nevertheless, be negligence for him to proceed with the erection of the building called for by the plans. * * *" Section 1539.

The subject is discussed under verba "Independent Contractors," section 26, vol. 14, R. C. L.: "Where one plans a work which necessarily involves a trespass on the premises of another, he cannot justify the wrongful act by the plea that the work is done by an independent contractor. Where a trespass has been committed upon the rights or property of another, by the advice or direction of a defendant, it is wholly unimportant what contractual or other relation existed between the immediate agent of the wrong and the person sought to be charged. The latter cannot shelter himself under the plea that the immediate wrongdoer did the act in execution of a contract, or that he came within the definition of an independent contractor as to the performance of the work in the execution of which the tortious act was committed. If he advised or directed the act, his liability is established. Thus for instance, a municipality which lets to an independent contractor the work of changing the grade of a sheet (street) is liable to a nearby owner if the work is such that it forces water or dirt on his premises. Similarly, if a canal company employs an independent contractor to plow the soil of an adjoining owner and use part of the dirt for alterations in its canal, it is liable. One building a house cannot impose on the contractor the duty of seeing that it is placed on the owner's lot; if an encroachment is made on the premises of another, the employer is liable for the trespass. * * *"

In Robbins v. City of Chicago, 4 Wall. 657, 18 L. Ed. 427, it was held, quoting syllabus, that:

"The principal, for whom the work was done, cannot defeat the just claim of the corporation or of the injured party, by proving that the work which constituted the obstruction or defect was done by an independent contractor.

"Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the employer is not liable.

"Where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agrees and is authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party."

This holding of the highest court of our nation was quoted approvingly in Davie v. Levy & Son, 39 La. Ann. 555, 2 So. 395, 4 Am. St. Rep. 225.

The same principle was upheld in: Weinman v. De Palma, 232 U. S. 571, 34 S. Ct. 370, 58 L. Ed. 733; St. Paul Water Co. v. Ware, 16 Wall. 566, 21 L. Ed. 455; So. Ry. Co. v. Lewis, 165 Ala. 555, 51 So. 746, 138 Am. St. Rep. 77; Miss. Cent. Ry. Co. v. Holden, 99 Miss. 124, 54 So. 851.

In Alabama M. Ry. Co. v. Williams, 92 Ala. 277, 9 So. 203, it was held: "In an action against a railroad for damages caused by reducing the grade of a street, * * * the fact that the grading, from which the injury complained of resulted, was done by a subcontractor does not affect defendant's liability."

The principle is inferentially upheld in Faren v. Sellers, 39 La. Ann. 1011, 3 So. 363, 4 Am. St. Rep. 256.

It is now fairly well settled by the jurisprudence of this state that the Louisiana Highway Commission, while being an agency of the state, enjoys no sovereign immunity when it commits a trespass upon the private

or property rights of a citizen of the state. In that respect, generally, it is of the same status as corporations, private or public, and private individuals. Murff v. La. Highway Comm., 19 La. App. 847, 140 So. 863; Id. (La. App.) 146 So. 328; Booth v. La. Highway Comm., 171 La. 1096, 133 So. 169.

In the Murff Case, the commission was mulcted in damages for destruction of plaintiff's growing crops, caused by impounded rain water on his land. The natural drainage of water from the land had been so altered by the commission, when constructing Dixie-Overland Highway, that when there occurred heavy rainfall the water did not run off the land rapidly enough to prevent the destruction of crops thereon.

In the Booth Case, it was held that the commission was liable for the taking of dirt, for road construction purposes, in excess of that covered by plaintiff's deed to the commission. In this case the court reviews recent decisions pertinent to the issues involved here, and makes it quite clear that when the commission damages or appropriates property which, under the law, it could have had condemned by expropriation proceedings, that it is responsible for its illegal acts and may be condemned by the courts to pay just compensation therefor.

The lower court cited in support of its judgment the cases of Beck v. Dubach Lumber Co., 171 La. 423, 131 So. 196, and Harper v. Police Jury of Bienville Parish, 2 La. App. 21. These cases are not in point. The principle involved in the case at bar was not present in either case.

No actual damage was done plaintiffs' property beyond the destruction of thirty-six pine, oak, and gum trees, ranging from 4 to 14 inches in diameter, plus the cutting down of some smaller growth. Commercially, the trees destroyed had little value, but for ornamental purposes to the lots plaintiffs contemplated subdividing the land into, they had a greater value. However, should lots be sold from the contemplated subdivision, and a sidewalk of the usual and customary width in front thereof be allowed and dedicated to public use, such will absorb about all of the 10-foot strip cleared by the trespass of Nelson Brothers.

In addition to the destruction of the trees and other growth on the land, the private rights of plaintiffs, intended to be secured by all the laws of the land, were invaded and violated. To cut the trees down, the fence around the property, though not of a substantial character, had to be removed or climbed over.

■ ■ The testimony introduced by plaintiffs estimates the damage to their property at from eight hundred to one thousand dollars. Defendant offered no evidence on the question of damages. Mr. Atkinson was of the opinion that for shade and ornamental purposes the destroyed trees had an æsthetic value of $900. In view of the facts of the case, this sort of value cannot be adopted as the measure of damage sustained from the trespass. If the trees destroyed had been all there were on the front line of the land, the æsthetic value would enter into the case more seriously; but as there are plenty trees left on the land, in fact, as we gather from the record, they are continuous back to the Farmerville road, a different case is presented.

All things considered, we believe an award of $300 will do substantial justice in the case.

For the reasons herein assigned, the judgment of the lower court is annulled, avoided, and reversed, and there is now judgment for plaintiffs, W. Ardis Marbury and Will E. Atkinson, and against defendant, Louisiana Highway Commission, for $300, with 5 per cent. per annum interest from judicial demand until paid, and all costs of suit.